WILLIAM R. CARROLL ET AL., RESPONDENTS, v. CITY OF
BAYONNE, APPELLANT.

JAMES QUINN ET AL., RESPONDENTS, v. CITY OF
BAYONNE, APPELLANT.

Argued November 21, 1923—Decided April 4, 1924.

NOTE.—These cases were brought into the Supreme Court by writs of
*certiorari* and were consolidated with the case of Cornelius J.
O'Neill, Prosecutor-Respondent, *v.* City of Bayonne, Defendant-
Appellant and argued together, and in the O'Neill case an opinion
by this court, has been filed at the present term, and in dispos-
ing of the Carroll and Quinn cases we have adopted the *per
curiam* filed by that court, so far as it relates to the Carroll and
Quinn cases.

On appeal from the Supreme Court, in which the following
*per curiam* was filed:

"On May 15th, 1923, an old board of commissioners gave
place to a new one at noon, according to the provisions of
the statute. Both boards seem to have assumed or acted on
the assumption that the word 'noon' meant noon of daylight-
saving time, whereas it is now contended for prosecutors, and
we concur in that position, that noon was noon of standard
time, as provided by another statute bearing on that subject.
4 *Comp. Stat., p.* 4879.

"As to the Carroll group. The facts seem to be that on
April 11th the old board, having about four days of official
life remaining, undertook to appoint some sixty-five persons
as officers and patrolmen and firemen in the police and fire
departments. The last meeting of the old board was on May
15th, at eleven thirty-five A. M., daylight-saving time, as we
understand it. The new board met on the same day, at
twelve-three daylight-saving time, and promptly resolved
that whereas the finances do not warrant an increase in the

police personnel, and so forth, that, for the reasons stated, the resolution just passed by the old board should be revoked and rescinded. That same evening, at an adjourned meeting, the new board amended the resolution by adding a statement that the patrolmen and others in question were unnecessary for the proper government of the city.

"As to this group we reach the result that the resolution of rescission must be set aside, for the reason that at the time it was passed the new board was not officially in existence, and that it was simply nugatory and void. It is argued that, although the minutes show the new board met at twelve-three daylight-saving time, or eleven-three standard time, it does not appear that the resolution in question was passed before twelve o'clock, but this, we think, cannot help the defendants, because it is manifest that the organization of the new board was a nullity; and where the statute fixes twelve o'clock noon as the precise moment when the official life of the new commissioners begins, and it appears that they undertook to perform official functions nearly an hour before that time, it will be presumed that official action taken at a meeting so organized was taken after the clock had struck, but we think the presumption is to the contrary. To the suggestion that the new board was a *de facto* board, the answer is that the important elements of *de facto* officers, namely, official action and occupancy of the office by general consent, are totally lacking. Nor do we think that the resolution, originally passed before noon, could be vitalized by an amendment in the evening. It might have been vitalized by re-enactment, but no such course was taken. The result is to set aside the omnibus resolution relating to the Carroll group.

"As to the Quinn group. This group consists of a number of appointments made ostensibly or actually to fill vacancies by the old board. The new board at this same meeting, at twelve-three daylight-saving time, undertook to rescind the appointments in the Quinn group, on the ground, among others, that there was no proof that the vacancies in question actually existed. But the actual existence or non-existence of

a vacancy was not a matter to be decided by the board on any theory of 'no proofs.' It was manifestly the duty of the board to ascertain in some way whether a vacancy existed or not, and to base legitimate action on such ascertainment. So far as we can see, on the case before us, appointments in this group were presumably valid and were protected by the various tenure of office provisions of statutes applicable thereto, and for these reasons, and because of the infirmity of the resolution, due to its premature passage before the new board came legally into existence, the resolution vacating the appointments in this class must also be set aside.

"Some of the prosecutors claim to be protected by provisions of the veteran acts, but the results above reached make it unnecessary to consider their special claims in that regard.

"The prosecutors are entitled to costs in all three cases."

For the appellants, *Eugene T. Sharkey.*

For the respondents, *Fallon & Fallon.*

PER CURIAM.

The judgments under review should be affirmed, for the reasons expressed in the opinion of the Supreme Court, but with this comment: The fact that the old board was still in existence as a *de jure* board, precludes any sound legal theory that the incoming board was a *de facto* board at the time it assumed authority to act. The judgments are affirmed, with costs.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, MINTURN, KALISCH, BLACK, KATZENBACH, CAMPBELL, GARDNER, VAN BUSKIRK, CLARK, JJ.   10.

*For reversal*—None.